**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JOHN E. BYICH,              ) | |
|        Plaintiff,     ) | |
|              ) | |
|     v.             ) | CAUSE NO.: 2:14-CV-29-PRC |
|              ) | |
| CAROLYN W. COLVIN,     ) | |
| Acting Commissioner of the     ) | |
| Social Security Administration,     ) | |
|        Defendant.     ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff John E. Byich on January 31, 2014, and a Memorandum in Support of Plaintiff's Motion for Summary Judgment or Remand [DE 29], filed by Plaintiff on December 2, 2014. Plaintiff requests that the July 12, 2012 decision of the Administrative Law Judge denying his claim for disability insurance benefits be reversed and remanded for further proceedings.

As an initial matter, the Court addresses what has become endemic filing irregularities by counsel for Plaintiff in this and other cases. After receiving two extensions of time to file his opening brief, Plaintiff purportedly filed an opening brief on July 28, 2014, but the document was blank. On July 30, 2014, Plaintiff again purportedly filed an opening brief. However, on October 31, 2014, after receiving two extensions of time to file a response brief, the Commissioner filed a Motion to Strike the July 30, 2014 opening brief, informing the Court that, although the caption on the brief was for this case, the facts, administrative history, and argument were for a different case. The Court struck the July 30, 2014 opening brief. With leave of Court, Plaintiff filed a new Opening Brief on December 2, 2014. The Commissioner filed a response brief on December 30, 2014.

On February 2, 2015, having received an extension of time, Plaintiff filed a reply brief. But, it was blank. The same day, Plaintiff refiled a reply brief with content. But, this time, the attorney signature did not match the electronic filer. On February 6, 2015, Plaintiff filed, for the third time, a reply brief. However, as with the original opening brief, although Plaintiff John Byich's name is in the caption of the document, the facts and argument are from a different case.

The same problem from the same Plaintiff's attorney and firm has come to light in two other social security cases before this Court. *See* 2:13-CV-422; 2:14-CV-24. In both cases, as in this case, the Court gave the plaintiff leave to file a new opening brief. In one of the requests for leave to file a new opening brief filed on December 30, 2014, plaintiff's counsel indicated that the attorney responsible for the errors was no longer working for the firm. However, the reply brief in this case, which does not address this Plaintiff's case, was filed on February 6, 2015. Thus, the problem persists. Given the length of time this case has been pending, the fact that Plaintiff was already once given an opportunity to refile a brief to properly address the facts of this case, and that the Court is able to make a ruling based on the Opening Brief and the Commissioner's response brief, the Court does not afford Plaintiff an opportunity to refile a reply brief.

For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff suffers from diabetes mellitus with neuropathy, recurrent right foot ulcer, attention deficit hyperactivity disorder, and anxiety disorder. On August 17, 2010, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging an onset date of April 25, 2009. The application was denied initially on December 9, 2010, and upon reconsideration on April 4, 2011. Plaintiff timely requested a hearing, which was held on June 12, 2012, before

Administrative Law Judge ("ALJ") Edward P. Studzinski. In appearance were Plaintiff, his father,

Plaintiff's attorney, and a vocational expert.

The ALJ issued a written decision denying benefits on July 12, 2012, making the following

findings:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 25, 2009, the alleged on set date.

3. The claimant has the following severe impairments: diabetes mellitus with neuropathy and recurrent right foot ulcer; attention deficit hyperactivity disorder (ADHD); and anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b). The claimant can stand/walk for 4 hours in an 8-hour workday but cannot assume any position for longer than 60 minutes after which he will have to change positions for 5 minutes without needing to abandon his workstation. The claimant can only walk one city block at a time; and he needs to be able to use an assistive device while walking. The claimant can occasionally operate foot controls with his right foot; occasionally balance; and occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme cold; hazardous environments, including large bodies of water or unexposed flames; hazardous unguarded machinery; and no driving. The claimant is limited to simple, routine, and repetitive tasks; can make only simple work-related decisions; requires the exercise of only simple judgment; and he can handle only occasional and minor changes in the work setting.

   [In a footnote to paragraph 5, the ALJ wrote: I note that even if the claimant had been limited to work at the sedentary exertional level as in hypothetical #3, there would still be jobs that the claimant could do in the national economy.]

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born [in 1962] and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.      The claimant has a limited education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 25, 2009, through the date of this decision.

(AR 25-37).

On October 24, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On October 22, 2013, Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision. Plaintiff only seeks review of the decision denying him disability insurance benefits.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse

only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and

the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## FACTUAL BACKGROUND

Because Plaintiff's opening brief challenges only the ALJ's assessment and accommodation of his foot pain, a symptom of diabetes, the Court limits the summary of the relevant evidence to those impairments and symptoms. Plaintiff has type I diabetes mellitus. Plaintiff worked with diabetes until April 2009. In 2005, his right foot became infected and the unhealthy tissue from the wound was removed (debridement). The procedure was successful enough to allow Plaintiff to work

at the medium exertional level as a truck driver until he lost his commercial driver's license following an episode where he passed out behind the wheel (syncope).

In May 2009, Upendra Patel, M.D., wrote that Plaintiff had scabs on his right foot with some discomfort but the rest of the area was fairly good. Plaintiff also complained of right foot pain due to calloses at subsequent visits. In August 2010, Nabeel Jabri, M.D., indicated that Plaintiff had signs of diabetic neuropathy with no signs of numbness, tingling, or other abnormal neurological findings.

In March 2011, Plaintiff passed out and was taken to the emergency room. Plaintiff had elevated blood sugar levels and was admitted for treatment. Bayne Spotwood, M.D., stated that Plaintiff had type I diabetes mellitus, uncontrolled, a syncopal episode, and peripheral neuropathy. Dr. Spotwood noted Byich's pain and history of ulcers on his right foot but his examination showed that the ulcer was closed at that time.

Later that month, on March 29, 2011, Plaintiff was examined by Mohammad Rahmany, M.D., on behalf of the state agency. Dr. Rahmany noted a scar and a remnant of a diabetic ulcer on Plaintiff's right foot. His musculoskeletal findings included a steady gait without an assistive device, and normal ability to stoop and squat, walk heel to toe and tandemly, and stand from a seated position. His neurological findings included normal reflexes, muscle strength, and no wasting or atrophy. Dr. Rahmany concluded that Plaintiff could walk 1 mile, stand for 1 hour at a time, and sit for 30 minutes to 2 hours at a time.

In April 2011, medical consultant J. Sands, M.D., completed a "Physical Residual Functional Capacity Assessment" form. Relying on the consultative examiner's report, Dr. Sands opined that Plaintiff could perform the basic demands of medium exertional work, including standing and/or

walking for 6 hours per day. That same month, Melvin Hess, M.D., a mental health treater, wrote that Plaintiff's right foot ulcer surfaced "once in a while." (AR 805). Dr. Hess subsequently wrote that Plaintiff had his right foot ulcer cleaned every three months.

In July 2011, Andrea DeLeo, D.O. wrote that Plaintiff had significant diabetic neuropathy in both legs and that there was evidence of small fiber neuropathic changes.

In August 2011, George Tsoutsouris, DPM, checked boxes on a form indicating that Plaintiff had neuropathy in his foot which caused sustained disturbance of gait and station. Dr. Tsoutsouris also stated that Plaintiff had ulceration, foot infection, and possible amputation.

In April 2012, Kimberly Meyer, M.D., Plaintiff's psychiatrist, noted Plaintiff's report that he had his right foot ulcer debrided every three months. That same month, Plaintiff went to the emergency room with complaints of a right foot ulcer "that has recently began to hurt again." (AR 737). A physical examination showed a 2 cm deep ulceration, mild necrosis, callous formation surrounding the ulcer with no surrounding cellulitis, and intact sensation in his foot. A physician performed a bedside debridement.

In June 2012, Tara Fox, DPM, checked boxes indicating that Plaintiff had neuropathy that caused sustained disturbance of gait and station, and she wrote that Plaintiff had chronic ulceration of his heel that could require amputation if his symptoms did not resolve.

## ANALYSIS

Plaintiff seeks an award of benefits or remand for further proceedings, arguing that the ALJ (1) failed to properly assess Plaintiff's subjective complaints of pain and (2) failed to assess an RFC that included all of Plaintiff's limitations from his diabetes. The Court considers each in turn.

## A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id.* The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)      The individual's daily activities;
(2)      Location, duration, frequency, and intensity of pain or other symptoms;
(3)      Precipitating and aggravating factors;
(4)      Type, dosage, effectiveness, and side effects of any medication;
(5)      Treatment, other than medication, for relief of pain or other symptoms;
(6)      Other measures taken to relieve pain or other symptoms;
(7)      Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367 (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff notes that SSR 96-7p provides:

Once the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce pain or other symptoms has been established, adjudicators must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings.

1996 WL 374186, at *3. The Seventh Circuit Court of Appeals has recognized that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 1529 because the ALJ did not account for Plaintiff's severe pain, which, according to Plaintiff, would preclude him from work activity. Plaintiff asserts that he suffers from chronic pain and that he treated regularly for his diabetes and secondary symptoms, including right heel pain and ulcers. However, Plaintiff cites only his November 20, 2009 office visit. (AR 466). He contends that, although he follows the directions of his doctors, his painful impairments have not subsided, noting generally that he has been treated with medications, debridement, shot inserts, emergency room visits, and surgery. Plaintiff argues that the ALJ failed to consider this treatment when evaluating his allegations of pain. More specifically, Plaintiff contends, without citation to the record, that he cannot stand four hours out of an 8-hour work day because of "painful, exposed, and at times draining foot ulcers." (Pl. Br. 11).

However, Plaintiff does not address any of the subsequent medical evidence that was thoroughly discussed by the ALJ and that supports the ALJ's finding that Plaintiff was not as limited as he claims. Rather, Plaintiff relies only on his sporadic complaints of pain to his treating doctors over time. His own complaints of pain do not constitute objective medical evidence. *See* 20 C.F.R.

§404.1528(b). The ALJ properly considered Plaintiff's complaints but then properly found that they were disproportionate to the medical evidence, were not endorsed by any doctor, and were inconsistent with Plaintiff's course of treatment. *See* (AR 31-34).

The ALJ gave reasonable explanations for discounting Plaintiff's testimony. *See Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). For example, the ALJ discredited Plaintiff's testimony that he had to spend much of the day lying down, explaining that the complaints were disproportionate to the medical evidence and that no doctor gave Plaintiff such instructions. It was reasonable for the ALJ to conclude that if Plaintiff's foot problems were so painful that he had to lie down much of the day, there would have been more abnormal findings on examination.

The ALJ also explained that Plaintiff's course of treatment was inconsistent with his claims that he was continuously disabled since the alleged onset date. The ALJ noted that while Plaintiff had a right ulcer on his foot at various times, "there [was] no specific indication of any substantial treatment for it" between April 2009 and March 2012. The ALJ noted that there was no prescription for crutches and that Plaintiff was using them at the hearing because of the recent debridement. The ALJ also properly found that Plaintiff's noncompliance with prescribed treatment "does not bolster the claimant's overall credibility." (AR 33). At the hearing, Plaintiff complained of numbness in his hands, but the ALJ noted that there is no record of Plaintiff complaining of hand numbness to his treating physicians and Dr. Rahmany found that Plaintiff had intact fine and gross manipulation. The ALJ examined Plaintiff's daily activities, noting that Plaintiff cooked occasionally, did dishes, went grocery shopping weekly, and spent time with friends. The ALJ recognized that Plaintiff's father wrote in an adult function report that Plaintiff did not have any problems with walking and did the laundry. The ALJ noted that both Dr. Hood and Dr. Ramos found that Plaintiff ambulated with a

normal gait and coordination and that Dr. Rahmany indicated that Plaintiff had a steady gait without the need for an assistive device and was able to stoop and squat without difficulty.

Plaintiff does not discuss any of this evidence or the ALJ's treatment of it; it is telling that Plaintiff makes only broad statements regarding the medical records without identifying any specific medical records. Nor does Plaintiff acknowledge the ALJ's alternate finding of sedentary work or argue that his foot pain precludes work at the sedentary exertional level.

Moreover, the "ALJ did not totally discount [Plaintiff's] testimony regarding how [his symptoms] affected [his] ability to perform certain activities, as evinced by the ALJ's decision to limit [Plaintiff's range of work." *Schmidt v. Barnhart*, 496 F.3d 833, 844 (7th Cir. 2007). Rather than outright rejecting Plaintiff's allegations of pain, the ALJ credited Plaintiff's allegations to the extent they were supported by the medical evidence of record, finding that Plaintiff could no longer perform his past relevant work and assigning a restrictive RFC for a limited range of light work. Notwithstanding the state agency medical opinion that Plaintiff could perform medium exertional work, the ALJ gave Plaintiff the benefit of the doubt in finding that he could only stand four hours per day and made the alternative finding that he was not disabled even if limited to sedentary work.

The ALJ's credibility determination is supported by substantial evidence and is not patently wrong. The Court will not reweigh the evidence or substitute its judgment for that of the ALJ. *See Shideler*, 688 F.3d at 310 ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review.").

## B. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young*, 362 F.3d at 1000; 20 C.F.R. § 404.1545(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5.[1] In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

Plaintiff argues generally that the ALJ committed reversible error by failing to create an RFC that incorporated all of Plaintiff's limitations. Specifically, Plaintiff argues that the ALJ incorrectly determined that Plaintiff is capable of performing work at the light exertional level because light

---

[1] Plaintiff cites primarily cases from the Fourth, Fifth, Eighth, Ninth Circuit Courts of Appeals, none of which are mandatory authority in the Seventh Circuit Court of Appeals.

work requires walking or standing for six hours in a day and the medical evidence supports a finding that he is capable of less than light work. In support, Plaintiff notes his continuing problems with foot pain and cites his complaints of pain at the May 26, 2009, June 30, 2009, November 30, 2009, March 1, 2010, and July 24, 2010 office visits.

But, as set forth above, the ALJ's credibility determination is supported by the record and is not patently wrong. As discussed above, the ALJ thoroughly discussed the medical evidence and opinion evidence in assigning the RFC. Plaintiff has not identified objective evidence that suggests he is more limited than found by the ALJ. Nor does Plaintiff argue that his more recent treatment for foot ulcers in April 2012 requires more significant limitations; this supports the ALJ's interpretation that the medical records support the RFC for a limited range of light work. In fact, Plaintiff has not made any new argument in this section of the brief. *See Olsen v. Colvin*, 551 F. App'x 868, 876 (7th Cir. 2014) (commenting that the plaintiff's argument that the RFC determination was erroneous "mostly recycles" her other claims).

Importantly, Plaintiff fails to acknowledge that the ALJ did not find that Plaintiff could perform the full range of light work but rather assigned him a limited range of light work with only four hours of standing or walking a day. And, again, Plaintiff fails to recognize the alternate finding that he is capable of performing sedentary work. *See Guranovich v. Astrue*, 465 F. App'x 541, 543 (7th Cir. 2012). The ALJ's RFC is supported by substantial evidence and the ALJ properly articulated his reasons for the RFC.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in the Memorandum in Support of Plaintiff's Motion for Summary Judgment or Remand [DE 29] and **DIRECTS** the Clerk

of Court to **ENTER JUDGMENT** in favor of Defendant the Commissioner of Social Security and

against Plaintiff John E. Byich.

So ORDERED this 4th day of March, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record